**NATIONAL TREASURY EMPLOYEES UNION, Plaintiff,**

v.

**Loretta CORNELIUS, Defendant.**

**Civ. A. No. 85–0129.**

United States District Court, District of Columbia.

July 15, 1985.

Lois G. Williams, Director of Litigation, Richard S. Edelman, Elaine D. Kaplan, Asst. Counsel, National Treasury Employees Union, Washington, D.C., for plaintiff.

Judith F. Ledbetter, Harriet Kerwin, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

On January 4, 1985, the Office of Personnel Management (OPM) issued a final rule, without prior notice or comment and effective immediately. The rule deleted certain provisions in the Code of Federal Regulations, specifically the final sentences of 5 C.F.R. § 531.410(d) and 5 C.F.R. § 536.-302(e). These provisions relate to the appeals process applicable to a denial of within-grade increases and to the termination of grade or pay retention rights. The rationale for the change in the rules was an OPM determination that "the alternative appeals procedures provided for in [these regulations] is beyond OPM's regulatory authority, since the law does not authorize OPM to create additional appeals mechanisms. These provisions were promulgated in er-

ror and must be deleted." 50 Fed.Reg. 427 (January 4, 1985). Plaintiff seeks declaratory and injunctive relief in support of its claim that this rulemaking was substantively and procedurally flawed.

## I

Defendant moved to dismiss this case on the grounds that there was no case or controversy, that plaintiff did not have standing to maintain this action and that this Court is not the proper forum to decide this case. The Court finds these contentions are without merit.

 Plaintiff challenges this rulemaking under the Administrative Procedures Act (APA), 5 U.S.C. § 551 *et seq.* Preenforcement judicial review of final agency rules is appropriate under the APA, 5 U.S.C. §§ 701–706. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *Amalgamated Meat Cutters & Butcher Work v. Connally*, 337 F.Supp. 737 (D.D.C.1971). Plaintiff, a union representing federal employees, claims that this regulation violates the Civil Service Reform Act, will result in agencies providing false information to federal employees on the subject of their appeal rights and ultimately result in the loss of those rights through procedural default. In response to this regulation, plaintiff has warned its membership that employees can only preserve their appeal rights by filing both an appeal to the Merit Systems Protection Board (MSPB) and a grievance pursuant to the collective bargaining agreement. The impact of this regulation on plaintiff is "sufficiently direct and immediate as to render the issue appropriate for judicial review at this stage." *Abbott Laboratories v. Gardner, supra,* 387 U.S. at 152, 87 S.Ct. at 1517. There is no reason why the Court must wait until a union member loses his right to appeal before considering the validity of these regulations. Furthermore, plaintiff's most com-

plete and effective remedy is a challenge to OPM's rulemaking rather than having to litigate the issue on a case-by-case basis with each federal agency.

OPM also argues that judicial review is inappropriate because the change in the regulation is "non-binding guidance OPM offered to federal agencies." Defendant's Motion to Dismiss at 8. There is absolutely nothing in the Federal Register notice which suggests that this change is non-binding or that this is merely OPM's interpretation of the statute and that other agencies are free to adopt their own statutory interpretation.[1] This situation is quite different from that described by the Court of Appeals in *Federal/Postal/Retiree Coalition v. Devine,* 751 F.2d 1424 (D.C.Cir. 1985). In that case, the Court of Appeals upheld OPM's authority to publish a Federal Personnel Manual which, according to OPM affidavits was "precatory and will not bind Federal agencies in the manner of a regulation." *Id.* at n. 14. OPM is now attempting to use that case as precedent to argue that its *regulations* are non-binding and not subject to review under the APA. This attempt must be rejected.

 Defendant's final jurisdictional defense is that the Civil Service Reform Act (CSRA) vests exclusive jurisdiction in the MSPB or the Federal Labor Relations Authority (FLRA) with direct appeal to the Court of Appeals. The exclusivity of the CSRA's procedures has been well-recognized in cases involving individual employee's rights. Thus, courts have recognized that aggrieved federal employees must pursue civil service remedies and cannot denominate their claim as an APA claim in order to seek relief in district court. See, *e.g., Pinar v. Dole,* 747 F.2d 899 (4th Cir. 1984); *Veit v. Heckler,* 746 F.2d 508 (9th Cir.1984); *Carducci v. Regan,* 714 F.2d 171 (D.C.Cir.1983). This does not, however, insulate OPM from direct judicial review of challenges to *rulemaking* under the APA.

---

1. Plaintiff filed as an exhibit a copy of a letter from the Employee and Labor Relations Branch of the Department of the Treasury, Bureau of Alcohol, Tobacco and Firearms. This letter

makes it clear that at least one Department has interpreted the OPM regulation as a binding, government-wide regulation.

The Court of Appeals made this clear in *National Treasury Employees Union v. Devine*, 733 F.2d 114, 117 n. 8 (D.C.Cir. 1984), when it stated:

> The appellant has also argued that this case cannot be brought under the Administrative Procedure Act, ... because provisions in the Civil Service Reform Act of 1978 ("CSRA") ... established the exclusive means to review the decisions at issue here ... This claim is meritless. It is one thing to say that when a statute provides a detailed scheme of administrative protection for defined employment rights, less significant employment rights of the same sort are implicitly excluded and cannot form the basis for relief directly through the courts ... It is quite different to suggest, as appellant does, that a detailed scheme of administrative adjudication impliedly precludes preenforcement judicial review of rules. Cf. *International Ladies' Garment Workers' Union v. Donovan*, 722 F.2d 795, 807 (D.C.Cir.1983) (rejecting similar implications based on enforcement scheme of Fair Labor Standards Act of 1938) [citations omitted].

■ The analysis used by the Court of Appeals is equally persuasive here and this Court concludes that it has jurisdiction to hear this challenge to OPM rulemaking.

## II

The substantive question in this lawsuit [2] is whether the provision in 5 U.S.C. § 5335(c) permitting employees to appeal denials of within-grade increases to the MSPB makes such appeals a matter "specifically provided for by federal statute." The Federal Register notice states that any matters specifically provided for by federal statute are not subject to a grievance pro-

cedure and therefore where the statute states that appeal to the MSPB would be appropriate, the regulation cannot permit utilization of a negotiated grievance procedure. Plaintiff argues that this position is contrary to law because it ignores other applicable provisions of law which indicate that denials of within-grade increases must be processed through the collective bargaining grievance procedure when the individual is covered by a collective bargaining agreement. In order to clarify this dispute the Court must consider the history of several statutes.

Federal employees who have been in grade for a certain period of time are eligible to receive salary increases if their work is "of an acceptable level of competence as determined by the head of the agency." 5 U.S.C. § 5335(a). If the determination is made that the employee's work is not at an acceptable level, "the employee is entitled to prompt written notice of that determination and an opportunity for reconsideration of the determination within his agency under uniform procedures prescribed by the Office of Personnel Management. If the determination is affirmed on reconsideration, the employee is entitled to appeal to the Merit Systems Protection Board." 5 U.S.C. § 5335(c).[3] Uniform procedures were promulgated which provided that employees were to receive written notice of their rights to receive reconsideration within the agency and to appeal to the MSPB. 33 Fed.Reg. 12448 (September 4, 1968). The new final rule which is being challenged essentially returns to the procedures in the original regulation.

In 1978, Congress passed the Civil Service Reform Act (CSRA) which contains in Title VII the Federal Service Labor-Management Relations Act. This statute

---

**2.** Plaintiff challenges both amendments in the Federal Register notice on procedural grounds. See *infra*. It has limited its substantive challenge to the provision on within-grade increases. 5 C.F.R. § 531.410.

**3.** This section was added to the Code by the Federal Employees Salary Act of 1965, Pub.L. 89–301, 79 Stat. 1111, *reprinted in* 1965 U.S.Code Cong. & Admin.News 1113, 1115. The Senate

Report states that the reason for requiring the Commission [later OPM] to establish uniform procedures for reconsideration was to avoid variances from agency to agency. S.Rep. No. 910, *reprinted in* 1965 U.S.Code Cong. & Admin. News 3824. Thus, it appears that Congress intended OPM regulations in this area to have a binding effect upon federal agencies.

substantially changed the structure of federal employment by creating an administrative appeals process through the Merit Systems Protection Board, recognizing federal employee rights to bargain collectively and establishing the Federal Labor Relations Authority. The Act requires that collective bargaining agreements contain negotiated grievance procedures, and further states that with limited exceptions these "procedures shall be the exclusive procedures for resolving grievances which fall within its coverage." 5 U.S.C. § 7121(a). Grievances are defined to include complaints concerning "any claimed violation, misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment." Conditions of employment are defined to exclude matters to the extent such matters are specifically provided for by federal statute. 5 U.S.C. § 7103. The only changes made in the provision on within-in-grade increases were so-called "technical conforming amendments" changing the reference in the statute from Commission to OPM. Thus, after passage of the CSRA, there existed two potential procedures for appeal of denial of within-grade increases, appeal to MSPB as set out in 5 U.S.C. § 5335(c) and utilization of a collective bargaining grievance procedure as set out in 5 U.S.C. § 7121(a).

New regulations were promulgated after notice and comment, establishing a procedure for reconsideration of a negative determination which took into account both procedures. The regulation stated:

> When a negative determination is sustained after reconsideration, an employee shall be informed in writing of the reasons for the decision and of his or her right to appeal the decision to the Merit

Systems Protection Board. However, for an employee covered by a collective bargaining agreement, a reconsideration decision that sustains a negative determination is only reviewable . in accordance with the terms of the agreement.

5 C.F.R. § 531.410(d), adopted in 46 Fed. Reg. 2317 (January 9, 1981). Thus as the CSRA was originally interpreted, there was no conflict between the two provisions—federal employees had the right to appeal a negative determination on a within-grade increase to the MSPB under a statutory procedure unless they were covered by a collective bargaining agreement. In the latter case, if the collective bargaining agreement permitted the filing of grievances on a matter, that procedure would be the exclusive procedure and the employee would not have the right to take an appeal to the MSPB.[4]

On January 4, 1985, OPM suddenly announced that this interpretation of the law was incorrect. The new OPM view is that where there is a statutory appeals procedure, such as that established in 5 U.S.C. § 5335, there can be no utilization of a collective bargaining grievance procedure. Accordingly, OPM amended 5 C.F.R. § 531.401(d) by deleting the last sentence. The regulation now reads:

> When a negative determination is sustained after reconsideration, an employee shall be informed of the reasons for the decision and of his or her right to appeal the decision to the Merit Systems Protection Board.

Federal employees, whether covered by a collective bargaining agreement or not, are told that they have the right to appeal to the MSPB.[5]

---

**4.** This interpretation was adopted by the Federal Circuit in *Moreno v. Merit Systems Protection Board,* 728 F.2d 499 (Fed.Cir.1984), where the court determined that the MSPB did not have jurisdiction over an appeal from a negative determination on a within-grade increase where the petitioner was covered by a collective bargaining agreement and could have utilized the grievance procedure. The grievance procedure was the exclusive remedy.

**5.** This is contrary to the MSPB regulation defining its appellate jurisdiction. 5 C.F.R. § 1201.-3(B). Therefore, under the new OPM regulation, an individual would be informed that he or she has the right to appeal to the MSPB when the MSPB regulations clearly state that it will not take jurisdiction over such appeals. There is a significant potential that individual federal employees will lose their appeal rights altogether—individuals like Mr. Moreno who pursue appeals to the MSPB only to be told that their

■ To the extent that the Court can discern OPM's reasons for amending the rule, the Court concludes that OPM has misinterpreted the relevant statutory provisions and that the amended regulation is not in accordance with law. It is clear from the legislative history that the mere fact that a statutory appeals process exists does not create a conflict with the negotiated grievance procedure. The issue of how the new negotiated grievance procedure would relate to other employee rights was specifically considered in both the House and Senate Committee Reports and the Conference Report. It is clear from these materials that "except for certain specified exceptions, an employee covered by a collective bargaining agreement must follow the negotiated grievance procedures rather than the agency procedures available to other employees not covered by an agreement." [6] Conference Report, H.R.Rep. No. 1717, 95th Cong., 2d Sess. 157 (1978), U.S. Code Cong. & Admin.News pp. 2723, 2891. The Act contemplates that the negotiated grievance procedure will be the exclusive remedy for some grievances which, absent collective bargaining, would be subject to appeal by statutory right to the MSPB. Defendant's claim that there is a statutory conflict is not supported by the language of the statute and is contradicted by the legislative history.[7] OPM is correct in its statement that the "law does not authorize OPM

exclusive remedy lay with the collective bargaining agreement and that remedy is now time-barred.

**6.** The Committee Report from the House indicates that the House version of the Act would have permitted employees to elect which procedures to utilize.

> An employee to whom the agreement applies is specifically afforded the choice to have his grievance processed under either a procedure negotiated in accordance with chapter 71 and set forth in the agreement reached pursuant to those negotiations or any applicable appeals procedure established by or pursuant to law.

In addition, employees could elect to pursue an unfair labor practices claim. Civil Service Reform Act of 1978, H.R.Rep. No. 1403, 95th Cong., 2d Sess. 55 (1978).

The Senate Report is somewhat more complicated in that it addresses both the scope and the effect of the negotiated grievance procedure. It states:

> The coverage and scope of the [grievance] procedure is left to negotiation between the parties so long as it does not conflict with statute and so long as it does not cover any of the matters specifically excluded from coverage by section 7221(d). Thus, if the parties choose to do so, they may negotiate into coverage under their grievance procedure many of the matters that are covered by statutory appeal procedures, such as appeal from the withholding of within-grade salary increases and appeal from reduction-in-force actions. With the exception of adverse actions and discrimination complaints, where a grievance falls within the coverage of the negotiated grievance procedure, both union and non-union members of the bargaining unit must use the negotiated procedure to resolve the grievance.

S.Rep. No. 969, 95th Cong., 2d Sess. 109–10 (1978), U.S.Code Cong. & Admin.News pp. 2723, 2831.

Thus, it appears that the House version of the statute would have permitted the employee to elect between a statutory appeals process and the negotiated grievance procedure whereas the Senate version would require the employee to follow the negotiated grievance procedure even where a statutory procedure existed. As noted above, during the Conference, the House receded and the Senate version of the bill was accepted with respect to the exclusivity of the grievance procedure. There is no suggestion in the legislative history that the existence of a statutory right of appeal automatically removed the substantive employee claim from the grievance procedure.

**7.** Defendant cites a number of cases for the proposition that the general language of 5 U.S.C. § 7121(a) cannot repeal *sub silentio* a preexisting statute which specifically defines employee appeal rights. See, *e.g.*, *New Jersey Air National Guard v. FLRA*, 677 F.2d 276 (3d Cir.1982). These cases support the government's position only if the Court were to find that a conflict existed between the two statutory provisions. In *New Jersey Air National Guard*, the Third Circuit explicitly found that the preexisting statute, the Technicians Act, did not merely create a procedure for handling grievances but rather it imposed a limit on procedures by placing essentially unreviewable discretion in the adjutant general. Thus, the court found that a provision permitting grievances under collective bargaining would be clearly in conflict with the language of the Technicians Act. In the case before this Court, however, it is possible to interpret the two statutory provisions in a way in which there is no conflict.

to create additional appeals mechanisms," 50 Fed.Reg. 427 (January 4, 1985). What OPM fails to recognize is that the law does not permit that agency to regulate away an appeals procedure granted by Congress.[8] The amended regulation is inconsistent with law and will be enjoined.

### III

■ Even had plaintiff not prevailed on its substantive argument, there is no question that this rulemaking procedure falls far short of that required by the APA. The APA requires that notice of proposed rulemaking shall be published in the Federal Register, that there be a 30 day period between notice and effective date, and that interested persons be given an opportunity to participate in the rulemaking. 5 U.S.C. § 553. It is undisputed that these procedures were not followed in this case. OPM argues that the APA does not apply to these amendments because the regulations as promulgated were "invalid provisions that were inconsistent with OPM's statutory authority."

The APA defines rulemaking as "agency process for formulating, amending, or repealing a rule." 5 U.S.C. § 551. In this case the agency formulated a rule in 1981, after notice and comment, which purported to establish procedures in accordance with law. Those procedures have been relied upon by federal employees and the Federal Circuit. No intervening events have occurred which would cast doubt on the validity of the original regulations, such as passage of a conflicting statute or a relevant court decision. The regulation was repealed and the sole reason given for undertaking this action was that "a review of OPM regulations" had indicated that there was an error in the regulation.

■ There is some superficial appeal to the government's argument that a provi-

sion which was promulgated in error is void *ab initio* and can be deleted without more ado. This position has however been rejected by the Court of Appeals in an analogous situation, *Consumer Energy Council v. Federal Energy Regulatory Commission,* 673 F.2d 425 (D.C.Cir.1982). The reasoning utilized in that case applies with equal force here:

> The ... argument that notice and comment requirements do not apply to "defectively promulgated regulations" is untenable because it would permit an agency to circumvent the requirements of § 553 merely by confessing that the regulations were defective in some respect and asserting that modification or repeal without notice and comment was necessary to correct the situation. Such a holding would ignore the fact that the question whether the regulations are indeed defective is one worthy of notice and an opportunity to comment.

*Id.* at 447 n. 79.

Here, OPM claims that the original regulation was defective because it exceeded OPM's statutory authority. The original rule was promulgated after notice and comment and remained in effect, with no discernible challenges to its appropriateness, for four years. It would significantly erode the usefulness of the APA if agencies were permitted unilaterally to repeal regulations dealing with the substantive rights of individuals under federal statutes, by declaring that the earlier regulations were just a mistake.

Furthermore, as the Court of Appeals noted in *Consumer Energy, supra,* the question of whether existing regulations are defective or inconsistent with law is itself worthy of notice and an opportunity to comment. Notice and comment ensure that all relevant matters are considered by the agency repealing its regulation and provide a reviewing court with a full record.

---

8. OPM argues that the MSPB procedure is a "personal right of appeal" and notes that under the grievance procedure the union, not the individual, determines whether a denial should be taken to arbitration. Defendant's Post-Hearing Memorandum at n. 1. The exclusive right of the union to require arbitration is a factor that employees should consider when deciding whether or not to unionize. It is not up to OPM to "protect" employees by unilaterally deciding that certain rights are too "personal" to be subject to the collective bargaining system.

OPM's failure to provide notice and an opportunity to comment is not justified by any urgency and there is no indication that the agency would have suffered any harm by complying with the requirements of § 553.

The Court finds that OPM's failure to provide notice and an opportunity to comment in its repeal of these regulations is inconsistent with the requirements of the APA. The new rule is therefore invalid.